# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
RANDOLPH S. KOCH,                         )
                                          )
     Plaintiff,                          )
                                          )
     v.                                  )     Civil Action No. 00-2428 (PLF/JMF)
                                          )
SCOTT J. BLOCH,                           )
                                          )
     Defendant.                          )
_____)

## REPORT AND RECOMMENDATION

This matter is before me for a Report and Recommendation on <u>Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment</u> ("Defs. Mot.").  For the reasons stated below, I recommend that this motion be granted and that plaintiff's case be dismissed in its entirety.

## INTRODUCTION

### Plaintiff's Complaint

Plaintiff pro se is Randolph S. Koch, a Financial Analyst at the Securities and Exchange Commission ("SEC"). <u>Second Amended Complaint</u> ("Compl.") ¶ 12.  Defendant is Scott J. Bloch, Special Counsel to the United States Office of the Special Counsel ("OSC"). Compl. ¶ 21. The gravamen of plaintiff's complaint is that the OSC failed to conduct sufficient investigations of his complaint that his employer, the SEC, retaliated against him for engaging in whistleblowing. Compl. ¶ 22.  Specifically, plaintiff alleges violations of Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*[1] ("Title VII"), Sections 501, 504, and

505 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 *et seq.*, and the Age

Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Compl. ¶ 21.  Plaintiff

also seeks injunctive relief for violations of his due process rights under the Fifth Amendment of

the Constitution. Compl. ¶¶ 2, 22.

## DISCUSSION

### The Facts

On July 9, 1995, plaintiff filed a complaint with the OSC, alleging that the SEC had

engaged in various prohibited personnel practices ("PPP") in retaliation for his engaging in

whistleblowing. Defendant's Memorandum in Support of its Motion to Dismiss or in the

Alternative for Summary Judgment ("Defs. Mem.") at 5.  Following an initial investigation, OSC

concluded that there were reasonable grounds to believe that a PPP had occurred. Id.  As a result,

on May 22, 1996, plaintiff was notified by letter that his complaint was being referred to one of

the Investigation and Prosecution divisions for further inquiry. Id.  On September 24, 1997,

plaintiff was notified that there was insufficient evidence to establish the occurrence of a PPP

and that a preliminary determination had been made to close the file. Id. at 6.  Plaintiff was also

notified that he had 16 days within which to provide the OSC with additional information or

documentation. Id. at 7.  Plaintiff did not convey any further information to the OSC during this

16 day period. Id.  As a result, on October 16, 1997, plaintiff was notified that the OSC was

closing its file. Id.  Plaintiff was also notified of his right to file an Individual Right of Action

_____

[1] All references to the United States Code are to the electronic versions that appear in
Westlaw and Lexis.

("IRA") with the Merit Systems Protection Board ("MSPB") and on December 22, 1997, he did. Id. n.6.  Plaintiff's IRA was denied by the MSPB on March 5, 1998. Id.; Randolph S. Koch v. SEC, 98 F.M.S.R. 82221 (M.S.P.B. 1998).

On May 15, 1998, plaintiff filed an Equal Employment Opportunity ("EEO") complaint against the OSC, claiming that the OSC discriminated against him in the handling of his 1995 complaint. Id. at 7.  On June 19, 1998, plaintiff was notified that because he was neither a current employee of the OSC or an applicant for future employment with the OSC, his complaint would be dismissed for failure to state a claim. Id. at 8.  On August 5, 1998, plaintiff filed an appeal of the OSC's dismissal of his EEO complaint with the Equal Employment Opportunity Commission ("EEOC"). Id.  On September 7, 1999, the EEOC affirmed the OSC's decision. Id.  On November 3, 1999, plaintiff filed a Request for Reconsideration with the EEOC. Id.  It was denied on July 7, 2000. Id.

On September 1, 1999, plaintiff filed a second PPP complaint with the OSC, again complaining that the SEC had retaliated against him for engaging in whistleblowing. Id. at 9. Plaintiff also requested a stay of the leave restriction. Id.  On September 10, 1999, plaintiff was notified that the OSC had made a preliminary determination that there was insufficient evidence to establish the occurrence of a PPP and that plaintiff's complaint would be closed. Id.  As with plaintiff's 1995 complaint, plaintiff was again notified that he had 16 days within which to provide additional information. Id.  On October 28, 1999, plaintiff withdrew his 1999 complaint. Id.

### Standards of Review

"Federal courts are courts of limited jurisdiction and only can adjudicate those cases that

fall within Article III of the Constitution and a congressional authorization enacted thereunder."

5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350

(3d ed. 2004).  Under Rule 12(b), a defendant may, prior to responding to the merits of plaintiff's

complaint, assert numerous defenses to the court's assertion of this jurisdiction. Id. at § 1342.

Motions to dismiss, therefore, do not address the merits of the complaint, but rather allow for the

speedy and efficient resolution of cases in the pretrial phase. Id.

In this case, defendants have first moved to dismiss based on the court's lack of

jurisdiction over the subject matter, under Rule 12(b)(1).  "When a court rules on a Rule 12(b)(1)

motion, it may 'undertake an independent investigation to assure itself of its own subject matter

jurisdiction.'" Settles v. United States Parole Comm'n, 429 F.3d 1098, 1107 (D.C. Cir. 2005)

(quoting Haase v. Sessions, 835 F.2d 902, 908 (D.C. Cir. 1987)).  In considering such a motion,

the court is not limited solely to the facts articulated in the complaint. Tootle v. Sec'y of the

Navy, 446 F.3d 167, 174 (D.C. Cir. 2006).  Rather, the court is free to consider materials outside

the pleadings. Id.; Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).  The

court must, however, refrain from any factual resolution of the evidence. Settles v. United States

Parole Comm'n, 429 F.3d at 1107 ("To the extent that this was a factual resolution of

[plaintiff's] allegations and a rejection of his theory of the case based on evidence submitted by

the [defendants], the district court exceeded the bounds of factual inquiry that . . . are appropriate

on review of a Rule 12(b)(1) motion.").  Finally, the court must construe the complaint in favor

of the complaining party, accepting the allegations made as true. Warth v. Seldin, 422 U.S. 490,

501 (1975).

**The Court Lacks Jurisdiction Over the Subject Matter**

4

Plaintiff, who has sued the Acting Special Counsel in his official capacity, demands that Court award him damages "representing back pay, forward pay . . . and other compensatory and punitive damages." Compl. at 14. "Sovereign immunity, however, does bar suits for money damages against officials in their *official* capacity absent a specific waiver by the government." Clark v. Library of Congress, 750 F.2d 89, 103 (D.C. Cir. 1984) (emphasis in original). The waiver must be unequivocally expressed in a specific statute. The Court of Appeals has recently stated:

> It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *see also United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain suit.") (citations omitted). The federal government may waive its sovereign immunity by statute, but that waiver "must be unequivocally expressed in statutory text." *Lane v. Peña,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (citing *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33-34, 37, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)); *see also United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Waivers may not be implied. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). And courts must "strictly construe[ ]" any waiver of sovereign immunity, "in terms of its scope, in favor of the sovereign." *Lane,* 518 U.S. at 192, 116 S.Ct. 2092 ("To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims.") (citation omitted); *Library of Cong. v. Shaw,* 478 U.S. 310, 318, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986); *Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981); *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951);

*Sherwood,* 312 U.S. at 590, 61 S.Ct. 767 (collecting cases).

<u>Webman v. Fed. Bureau of Prisons</u>, 441 F.3d 1022, 1025 (D.C. Cir. 2006).

As noted, plaintiff relies upon Title VII of the Civil Rights Act of 1964, Sections 501, 504, and 505 of the Rehabilitation Act of 1973, and the ADEA.  These statutes unquestionably authorize an action for damages by an employee of an agency to redress the discrimination practiced by that agency.  But, plaintiff is suing an agency of the federal government other than the one that employs him so it must be clearly established from the pertinent statutes that there is an explicit waiver of sovereign immunity permitting that action.  The only sections of these statutes from which a waiver could be derived are the following:

I.      <u>Title VII</u>

Title VII of the Civil Rights Act provides, in pertinent part, that "[a]ll personnel actions affecting [federal] employees . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16.

II.     <u>The ADEA</u>

The ADEA requires that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in executive agencies . . . be made free from any discrimination based on age." 29 U.S.C. § 633a(a).

III.    <u>The Rehabilitation Act</u>

Section 501(b) of the Act, 29 U.S.C. § 791(b) requires executive branch agencies to submit an affirmative action program plan for the "hiring, placement, and advancement of individuals with disabilities in such . . . agency . . . ." <u>Taylor v. Small</u>, 350 F.3d 1286, 1291 n.**

(D.C. Cir. 2003).  Plaintiff's reliance on Section 504 of this Act, 29 U.S.C. § 794, is also

misplaced; that section does not provide an alternative route for relief under the Rehabilitation

Act. Id. at 1291.  Finally, "Section 505, 29 U.S.C. § 794a(a)(1), makes Title VII remedies

available to an employee 'with respect to any complaint under section 791 [*i.e.*, 29 U.S.C. § 791]

of this title.'" Id. at 1291 n.**.

**There is No Waiver of Sovereign Immunity**

I.        The Rehabilitation Act

        Taking the Rehabilitation Act first, the imposition of an obligation on federal agencies to

submit affirmative action plans for the hiring and placement of the disabled cannot possibly be

construed as a waiver of sovereign immunity permitting the award of money damages against the

Office of Special Counsel.

        The extension of Title VII remedies to employees of federal agencies means, at most, that

federal agencies are subject to a suit for discrimination in the "hiring, placement, and

advancement of individuals with disabilities" but plaintiff cannot complain that he was hired,

placed, or not advanced in his employment by the Office of Special Counsel.  Waivers of

sovereign immunity must be strictly construed.[2]  It is impossible to read the requirement that

---

[2]
> A statute waiving the sovereign immunity of the United States
> must be construed strictly. *Shaw,* 478 U.S. at 318, 106 S.Ct. at
> 2963; *Ruckelshaus,* 463 U.S. at 685-86, 103 S.Ct. at 3277-78.
> Indeed, such a waiver is to be read no more broadly than its terms
> require. As the Supreme Court has more than once said with
> specific reference to a statute arguably waiving the immunity of the
> United States from the assessment of interest:
> There can be no consent by implication or by use of ambiguous
> language. Nor can an intent on the part of the framers of a statute

federal agencies file affirmative action plans and provide certain remedies to disabled employees

as the granting of an entitlement to money damages in favor of a disabled person when his

complaint against that agency, *i.e.*, the Office of Special Counsel, does not involve his "hiring,

placement and advancement" at that agency.

II.     Title VII and the ADEA

Title VII and the ADEA require that all personnel actions be free of the discrimination the

statutes condemn.  Once again, a waiver of sovereign immunity must be clearly expressed.  The

words "personnel action" cannot possibly be stretched to also include an independent

investigation by the Office of Special Counsel of an employee's complaint that someone he is

working with has engaged in the behavior described in the Whistleblower Act, *i.e.*, "(A) a

---

or contract to permit the recovery of interest suffice where the
intent is not translated into affirmative statutory or contractual
terms. The consent necessary to waive the traditional immunity
must be express, and it must be strictly construed.
*Shaw,* 478 U.S. at 318, 106 S.Ct. at 2963 (quoting *United States v.
N.Y. Rayon Importing Co.,* 329 U.S. 654, 659, 67 S.Ct. 601, 604,
91 L.Ed. 577 (1947)). This rule of strict construction controls our
analysis both in determining whether the United States has
consented to be sued and in defining the scope of that consent. *See
Nichols v. Pierce,* 740 F.2d 1249, 1257 (D.C.Cir.1984) ("The
policies inherent in the rule requiring strict construction of waivers
of sovereign immunity strongly suggest that any doubts about the
scope of a waiver be resolved in favor of the narrower
governmental liability"); *see also In re Nofziger,* 938 F.2d 1397,
1403 (D.C.Cir.1991) (refusing to interpret waiver more broadly
than terms required and noting such waivers not subject to
equitable expansion).

Brown v. Sec'y of the Army, 78 F.3d 645, 649 (D.C. Cir. 1996).

8

violation of any law, rule, or regulation; or (B) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 1213(a)(1)(A), (B).

### The Court Lacks Jurisdiction Over Plaintiff's Constitutional Claim

As noted above, plaintiff also claims that he has a property interest in invoking the protection of the laws administered by the Office of Special Counsel and that he was deprived of it without due process of law. This claims fails as well for lack of jurisdiction over its subject matter.

I.    The Civil Service Reform Act ("CSRA")

Congress enacted the CSRA in 1978 for the express purpose of providing an "'exclusive administrative and judicial remedy for federal employees challenging adverse employment actions.'" Gardner v. United States, No. 96-CV-1467, 1999 WL 164412, at *6-7 (D.D.C. 1999) (citing Keen v. Brown, 958 F. Supp. 70, 72 (D. Conn. 1997)). See also United States v. Fausto, 484 U.S. 439, 445 (1988) (noting that the CSRA "replaced [a] patchwork system [of statutes and rules] with an integrated system of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration."); LeBlanc v. United States, 50 F.3d 1025, 1029 (Fed. Cir. 1995) ("The Civil Service Reform Act . . . created a comprehensive system of procedural protections for civil service employees faced with adverse personnel actions. This framework for review of certain types of personnel actions essentially preempted the field, superseding the haphazard arrangement of administrative and judicial avenues for appeals of adverse actions to the Civil

Service Commission, the district courts, and the Court of Claims.").

Included in the collective remedies provided by the CSRA are protections for those who engage in whistleblowing, defined as "(1) any disclosure of information by an employee, former employee, or applicant for employment which the employee, former employee, or applicant reasonably believes evidences–(A) a violation of any law, rule, or regulation; or (B) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 1213(a)(1)(A), (B).  If an employee believes he or she has been retaliated against for engaging in whistleblowing, the employee may petition the OSC of the MSPB. 5 U.S.C. § 1213(b).[3]  If dissatisfied with the decision rendered by the OSC, the employee may then file an IRA with the MSPB. 5 U.S.C. § 1221.  Finally, if the employee is dissatisfied with the decision of the MSPB, he or she may file suit with the United States Court of Appeals for the Federal Circuit. 5 U.S.C. § 1214(c)(1), (2); 5 U.S.C. § 7703(b).

II.      There Is No Jurisdiction to Review OSC's Action

As stated above, the essence of plaintiff's complaint is that the OSC conducted an insufficient review of his claims against the SEC.  In other words, as stated so aptly by the defendant, "This lawsuit does not challenge the underlying employment practices at SEC, nor is this an appeal of a final decision of the Merit Systems Protection Board regarding a request to investigate his allegations after the OSC decided not to investigate them further.  It is merely a collateral attack on OSC's investigative duties." Defs. Mem. at 2.  In order to make such a challenge, however, plaintiff is, as with his substantive challenge to the actions of the SEC, made

---

[3] In some cases, an employee may have the right to appeal directly to the MSPB. 5 U.S.C. § 1214(a)(3).

by separate complaint,[4] bound by the comprehensive procedures established by the CSRA.

Under the CSRA, "The Special Counsel shall receive any allegations of a prohibited personnel practice and shall investigate the allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken." 5 U.S.C. § 1214(a)(1)(A).  Once such a determination has been made, however, the CSRA "does not provide for subject matter jurisdiction in the United States district courts for review of OSC decisions made pursuant to its authority under the statute." Carson v. United States Office of Special Counsel, No. 04-CV-315, 2006 WL 785292, at *3 (D.D.C. March 27, 2006).  In other words, "this court only has jurisdiction to review whether OSC conducted an investigation, it cannot pass on the merits of OSC's decision to terminate an investigation." Id. at *5; Wren v. Merit Sys. Prot. Bd., 681 F.2d 867, 876 n.9 (D.C. Cir. 1982) ("It is also quite clear from the statutory language and corresponding legislative history that Congress did not mean to make the OSC's decision to terminate or conduct an investigation or bring a proceeding before the Board reviewable on the merits.").  Thus, regardless of the bases of plaintiff's claims, be they statutory or constitutional, this court has no jurisdiction over the merits of the OSC's decision not to investigate.

**CONCLUSION**

I recommend that this case be dismissed for lack of jurisdiction over its subject matter.

**Failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting**

---

[4] See Complaint at 2-4, Koch v. Donaldson, No. 03-1812 (D.D.C. Aug. 28, 2003).

such findings and recommendations.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).


_____

JOHN M. FACCIOLA

Dated:                                                    UNITED STATES MAGISTRATE JUDGE